## JOHNSON vs. HINES.

1. A husband and father in the possession of slaves, executed an instrument under seal, upon consideration of natural love and affection to his wife for life, and after her death to her children, using these words, "I, B. J., do give, grant and convey." (Certain slaves by name.) In the next clause these words occur, "To have and to hold *after my death* the aforesaid property," etc. *Held*, That in the first clause there is a clear gift in presenti; that the words *"after my death"* in the *habendum*, may be construed into a postponement of possession and enjoyment by the donees, until the donor's death, or a reservation of an estate for his life, and thus reconciled with the prior gift in presenti; that if the two clauses conflict, the first must prevail, and that in either view the instrument is a deed and not a testamentary paper.

2. A conveyance from a husband to his wife directly, will be supported in Equity, as against his representative, under circumstances showing the absence of fraud, and a clear intention to settle the property upon her, or upon her and her children, especially if he derived the property through her.

In Equity, in Emanuel Superior Court. Decision on demurrer made by Judge HOLT, on the 25th of September, 1860.

Mary A. B. Johnson exhibited her bill in equity against Joseph H. Hines, in which the following charges and allegations are made, to wit:

Anthony Bonnell, the complainant's father, departed this life, in July, 1825, having by his will, bequeathed to the complainant a negro girl by the name of Ritt, and a negro boy by the name of Prior, together with some other property; on the 4th day of July, 1837, the complainant intermarried with Littleberry Johnson, who upon such intermarriage, received said negroes and other property as the sole and separate property of the complainant, and so managed and treated the same; on the 14th October, 1843, the said Littleberry Johnson, for the purpose of better securing the legal and equitable interest of the complainant, in said negroes, and in order the more distinctly and formally to set apart said negroes to the complainant, and to preserve and secure to complainant the complete enjoyment thereof, and to convey all right, title and interest, which might have acquired by reason of his intermarriage with the complainant, made a deed of gift, which was duly proved and recorded, and of which the following is a copy, to wit:

DEED OR WILL. "Though an instrument may have the general form of a deed, yet if its evident intention is to pass no estate until the death of the maker, it will be construed to be testamentary in character." Sperber *v.* Balster, 66 Ga. 317 (1), 319, 322.

"A paper in the form of a deed and attested as such, conveyed certain realty to a trustee for the use of the grantor's wife for life, and with remainder to the person named as trustee and his children. It also contained the following words: "Also stock of all kinds, household

(EXHIBIT A.)

"STATE OF GEORGIA, EMANUEL COUNTY:

"To all whom it may concern, I, Berry Johnson, do send greeting: Know ye that I, the said Berry Johnson, of the State and county aforesaid, for the love, good will and affection, which I have for my beloved wife, Mary Ann Johnson, do by these presents, freely give unto my beloved wife Mary Ann Johnson, her heirs, executors and administrators, all and singular, two certain negro slaves, one, a girl, about the age of fourteen, by the name of Ritt, the other, a boy, about eleven years old, by the name of Prior, to have and to hold the above described two negro slaves, to her, the said Mary Ann Johnson, her heirs, executors and administrators from henceforth, to be her, and their property without any manner of conditions.   In witness whereof, I, the said Berry Johnson, have set my hand and seal, this the 14th day of October, 1843.

"Signed, sealed and delivered in presence of Washington Williams and William Johnson.

"BERRY JOHNSON." [L. S.]

Said negro girl Ritt, has given birth to several children, to wit: Mary, Lewis, Hannah and Fanny.   On the 4th day of October, 1848, in order, if possible, more fully to secure said negroes and their increase, to the sole and separate use and enjoyment of the complainant, and to protect the interest and right of the complainant against any claim which might be set up by any person by reason of the marital rights of the said Berry Johnson, he, the said Johnson, executed another deed, which was recorded on the 4th of March, 1854, and of which the following is a copy, to wit:

(EXHIBIT B.)

"GEORGIA, EMANUEL COUNTY:

"This indenture made this the 4th day of October, 1848, between Littleberry Johnson, of said county and State, of the one part, and Mary Ann Johnson, wife of the said Littleberry Johnson, for, and in consideration of the natural love and affection which he has and bears to his said wife Mary

and kitchen furniture, and any other species or kind of property in the possession of said (grantor) at the time of his demise, with all the rights, members and appurtenances to said property belonging or in any manner appertaining."   The instrument was delivered and recorded:

**Held,** that the paper was a deed and not a will, and conveyed title in presenti, but the possession of the personalty, and perhaps also of the realty, was postponed until the death of the grantor."   Youngblood v. Youngblood, 74 Ga. 614 (1), 617.   See Dismukes v. Parrott, 56 Ga. 513.

Ann Johnson, to be at her whole, sole disposal at my death, the following property, to wit: a negro woman about 22 years old; Prior, or Gabriel, known by either name, a boy about 15 years old; Mary, a negro girl, about one year old, to have and to hold the aforesaid negroes, and their issue or increase, unto the said Mary Ann Johnson for her use and disposal her lifetime, and at her death, to belong to her children, together with all, and singular the increase, profit, and issues of said negroes, unto the said Mary Ann Johnson and her children forever in fee simple.

"In testimony whereof, the said Littleberry Johnson hath hereunto set his hand and affixed his seal, the day and year above written.

"Signed, sealed and delivered in presence of George W. Clifton and Stephen Lewis, J. P.

"LITTLEBERRY JOHNSON," [L. S.]

In the year 1849, Anthony W. Bonnell, the brother of the complainant, departed this life in the county of Bulloch, leaving a will, which was duly proved and admitted to record, in and by which, the said Anthony W. Bonnell bequeathed all his property, both real and personal, to the complainant, her mother, and her brother, William Bonnell; it was the intention of the said Anthony W. Bonnell, by his said will, to create a separate property in the bequest made to the complainant, and to settle the property so bequeathed to complainant upon her, and to her sole and separate use, and the said Littleberry Johnson, well knowing such to be the intention of the said Anthony W. Bonnell, and desiring to carry out his wish in the premises, received the property so bequeathed to the complainant into his possession, so treated and managed the same as the trustee of complainant, there being no clause in the will providing for a trustee; the property thus received under the will of the said Anthony W. Bonnell, consisted in part, of a negro boy named Isaac, and a negro girl called Rhody, who afterwards gave birth to four children, to wit: Leah, Ellen, Ned and Ben; the following is a copy of the will of Anthony W. Bonnell, to wit:

### (EXHIBIT C.)

"GEORGIA, Bulloch County:

"In the name of God, Amen. I, Anthony W. Bonnell, of said county and State, being low of body, but of sound mind

---

"The **test to determine whether an instrument is a deed or will is,** whether it is to take effect immediately or after the death of the maker. Under this rule, the instrument in this case is a deed." White *v.* Hopkins, 80 Ga. 154 (1). * * * * "To construe it as a will, the intention of the grantor would be defeated because it can not be set up

and memory, knowing it is once appointed for all men to die, I commend my soul to God, and my body to the dust, and what it has pleased God to bless me with, so far as regards my worldly effects and small estate, I dispose of as follows: Item 1. I give and bequeath unto my beloved mother, and my brother William Bonnell, and Mary Ann Johnson, after paying all my just debts, all of my slaves, to wit: one negro man named Gabriel; one woman named Mary; one named Rhody; and a boy named Isaac; one girl named Betty; also one bay mare; one two-barreled gun. The above named property to be equally divided amongst the three named persons, and not otherwise. And I do appoint James Lee my sole and lawful executor, to this my last will, and I charge and require him to see that this my will is carried into effect. This the 13th of April, 1849.

"Signed in presence of Malachi Mercer and Andrew Bird. "A. W. BONNELL."

For the purpose of carrying out the well known wish and intention of the said Anthony W. Bonnell, and for the purpose of securing the property bequeathed to the complainant by the said Anthony W. Bonnell, to her sole and separate use, and for the purpose of protecting said property from any and all claims, which might be set up to said property on account of the marital rights of the said Littleberry Johnson, he, the said Littleberry Johnson, executed a deed, which was duly recorded on the 4th of March, 1854, and of which the following is a copy, to wit:

## (EXHIBIT D.)

"GEORGIA, EMANUEL COUNTY.

"This indenture made the 3d day of January, 1850, between Berry Johnson of said county and State, of the one part, and his wife Mary Ann Johnson of the same place, of the other part, witnesseth: that the said Berry Johnson, for, and in consideration of the natural love and affection which I have to her, the said Mary Ann Johnson, I, Berry Johnson, do give and grant, and convey, unto the said Mary Ann Johnson, during her natural life, and at her death to belong to her chidlren, or heirs of her body, one negro girl named Rhody, and her increase; also one negro boy named Isaac;

as a will, having only two witnesses. Upon this subject and sustaining these views, see 3 Kelly, 460; 4 Ga. 75; 6 Ga. 526; 15 Ga. 103; 29 Ga. 677; 22 Ga. 472; Id. 462; Id. 491; 31 Ga. 720." Id. 157-8.

"A paper attested by more than two witnesses and containing three clauses, the first of which, in the form of a deed of gift, purports to convey title to land, the second of which declares the grantee shall have and hold such lands after the maker's death, together with certain described

said girl about 10 years old, and said boy being about seven years old; to have and to hold the aforesaid property at my death, as above stated, unto her, the said Mary Ann Johnson and her children, and heirs of her body, and assigns, together with all and singular, the rights, members, and appurtenances to the same, in any manner belonging to them and their own proper use, benefit and behoof, forever in fee simple.

"In witness whereof, the said Berry Johnson, hath hereunto set his hand and affixed his seal, the day and year above written.

"Signed, sealed and delivered in the presence of W. Bonnell and James Lee, J. P.

"BERRY JOHNSON." [L. S.]

On the 10th day of April, 1856, the said Littleberry Johnson, the husband of complainant, departed this life intestate, leaving a large and valuable estate, of real and personal property, in his own right, over and above the payment of his debts; and also leaving the complainant a widow, with eleven children, ten of whom are girls, and who are interested in said negroes, and are entitled to them at the death of complainant, and who are to be supported and educated by complainant. No provision was made in any of said deeds for the appointment of a trustee, nor did any trustee intervene in the treaties and negotiations relative to said property, or in the execution of said deeds, which makes it necessary to resort to a Court of Equity for the enforcement of the complainant's rights. Joseph H. Hines, as the administrator *de bonis non*, of the said Littleberry Johnson, deceased, commenced an action of trover in Emanuel Superior Court against the complainant, for the recovery of said negroes, Prior, Ritt and her children, Mary, Lewis, Hannah and Fanny, also the negro boy Isaac, and the negro girl Rhody and her children, Leah, Ellen, Ned and Ben; and also the hire of said negroes, which action is now pending in said Court, and that the said Joseph H. Hines is endeavoring to recover said negroes as the property of the estate of the said Littleberry Johnson, deceased, notwithstanding the deeds and will aforesaid; and notwithstanding the said Littleberry Johnson, held, treated and managed said negroes as the sole and separate property of the complainant up to the time of his death, and so declared time and again.

personal property not referred to in the first clause, "the burial expenses and just debts of" the maker "to be paid first," and the third clause of which declares that all of his other property of every kind shall be divided among certain other named persons designated as "heirs," calls this disposition of his property a "division," and then expressly declares all other "wills and conveyances" null and void, is

The bill prays that Hines may fully answer the charges of the bill; that the action of trover may be enjoined; and that the deeds may be reformed in every particular in which they are defective, so as to convey, confirm, and vest in complainant the full and absolute property in all of said slaves, and for general relief.

The injunction was granted as prayed for, on the 2d of September, 1859.

The defendant, Hines, set up a demurrer to the bill, on the following grounds, to wit:

1st. That a Court of Equity has no power to reform the deed set forth in the bill, under the allegations contained therein, there being no charge of fraud, or mistake in the drafting of said deeds at the time they were executed.

2d. That said deeds are void, being in their legal effect wills, and not deeds, and are not properly probated.

3d. That the bill seeks to set up a parol trust against conveyances absolute on their face, and the trust being voluntary, can not be enforced, if anything is to be done to make it valid.

4th. That the Superior Court of Emanuel county has not jurisdiction of the case, because at the time of filing the bill, and from that time to the present, the defendant, Hines, resided, and still resides, in the county of Burke, and not in the county of Emanuel.

5th. That according to the allegations of the bill, it seeks to set up a contract or agreement relative to slaves, which contract or agreement, nor any note or memorandum of the same was ever reduced to writing and signed by the defendant's intestate, or any other person thereunto by him authorized, and is, therefore, violative of the statute of frauds, as extended to contracts relative to slaves by an Act of the General Assembly passed 28th February, 1856.

It was agreed and admitted by the parties, that Hines resided in Burke county as alleged in the 4th ground of the demurrer, and that Littleberry Johnson was a widower when he married complainant, and that he then had several children by a former wife, which children are still living.

The presiding Judge sustained the demurrer and dismissed the bill, and this decision is the error complained of in this case.

testamentary in character, and does not operate to convey any present title to the land described in the first part of the instrument." Barnes v. Stephens, 107 Ga. 436. Johnson v. Hines is criticised in Sperber v. Stephens, 107 Ga. 441, 442.

"A paper in form a warranty deed and executed as such is not testamentary in character, notwithstanding it contains a clause in the following language: "To have and to hold the above described premises to the said Bryant P. Wynn of the second part, his heirs and assigns,

LALLERSTEDT, for plaintiff in error.

SHEWMAKE, for defendant in error.

*By the Court.*—JENKINS, J., delivering the opinion.

The judgment excepted to sustained the defendant's demurrer to complainant's bill. There is some discrepancy between the transcript of the record and the bill of exceptions, in the statement of the grounds of demurrer; we take them as presented by the bill of exceptions appearing at the close of the reporter's statement.

There is in the bill a prayer for reformation of deeds attached as Exhibits A., B. & D.; a prayer that complainant may be confirmed in her legal and equitable title to the slaves in dispute, and a general prayer for relief.

The first and second grounds of demurrer, are directed against so much of the bill as seeks reformation of the deeds, and the remaining grounds against the general equity set up in it, and the relief sought under it.

The two first grounds are well taken, there being no sufficient averment either of fraud or mistake in the framing or in the execution of the deeds, nor any distinct statement of the reformation sought.

If, however, without any reformation of the deeds, complainant has made a case which entitles her to other relief asked, the bill should be retained, and defendant required to answer.

We, therefore, consider the other grounds of demurrer. The third ground is, that the papers exhibited are not in legal contemplation deeds, but are testamentary papers, and valueless as muniments of title for want of probate. The Court below sustained this ground, except as to exhibit A. The view of the Court, as to exhibits A. & B., treating the former as a deed, and the latter as a testamentary paper, we think was right.

1. We disagree with the learned Judge in ascribing to exhibit D., the character of a testament and not of a deed. This paper is so far technically framed that it contains a distinct granting clause, and also a *habendum* and *tenendum*. The granting clause, which is the most essential part, is expressed in language which most clearly imports a gift in *pre-*

to be his at my death and the death of my wife, Elizabeth Wynn." Wynn *v.* Wynn, 112 Ga. 214.

**HUSBAND'S CONVEYANCE TO WIFE.** "In Johnson *v.* Hines, 31 Ga. Rep. 728, Judge Jenkins, delivering the opinion, lays down the rule that **conveyances to the wife** directly, either by the husband or another, may be **upheld in Equity;** that **the conveyance is a declaration of trust**

*senti,* "I, Berry Johnson (upon the consideration stated), do give, grant and convey," etc. And it is a grant or gift of a life estate to his wife, with remainder to her children. These words import a present, immediate vesting of the title. Doubtless the opinion of the Court below was predicated upon the phraseology used in the *habendum,* "to have and to hold the aforesaid property *at my death,* as above stated," etc.

Now, either these words are consistent with the clearly expressed gift in *presenti* in the granting clause, or they are not. It is the duty of Courts to make them consist, if possible, without doing violence to law. By treating the first clause as a gift in *presenti,* passing the title at the moment of execution, and the second as a postponement of possession and enjoyment of the property, by the donees, until the death of the donor, they are made to consist. It is then the common case of a gift by deed, reserving a life estate in the donor. We see no difficulty in this construction; it is a familiar use of the the *habendum* to place limitations upon the estate conveyed by a prior granting clause. In conveyances in trust, where the legal title passes by the granting clause, it is by the *habendum* that the trusts, uses and limitations are declared, and the whole deed is sustained, because the two clauses are reconcilable.

But suppose that, in this case, the two are irreconcilable, which shall prevail? It is a well settled rule of law, that if there be an irreconcilable conflict between two clauses in a deed, the first shall prevail; it is regarded as first done and complete, and therefore beyond the power of the grantor. It is otherwise in a will, because, from the nature of the instrument, the *last* expression of testamentary intention must prevail. Had the grantor said, in the first clause, "I give, at my death," or had he used any equivalent words, he would thus have manifested an intention to postpone the vesting of the property, the transfer of the title, until the happening of that event; and it is precisely that intention which impresses upon an instrument, whatever be its form, the testamentary character. But it is otherwise in this instrument.

Thus we arrive at the conclusion, that the instruments set forth, in exhibits A. and D., are deeds, and not wills; and it appears that they cover all the property in dispute.

Still, however, it is assumed, in the 4th and 5th grounds of demurrer, that, as deeds, they are void, because moving

and **Equity will hold him and his representatives bound by it;** especially when the property came through his wife, with an understanding that it should be her separate property. 'The true intent of the parties will be carried into effect in Equity without regard to form.' " Crawford *v.* Brady, 35 Ga. 191.

"**Where,** in 1842, the father of a married woman conveyed certain lands to her, but his deed was not such as to prevent the marital rights

from the husband to the wife.    It was insisted, in the argument, that the husband could not convey directly to the wife. The idea is presented that even if a deed, from husband to wife could be considered as passing title, it would accomplish nothing, for the reason, that so soon as the title vested in the wife, the husband's marital rights would attach, and the title at once revest in him.    This is a strictly legal view of the subject.    But there are equities, between husband and wife, which, though ignored by Courts of Law, are constantly recognized and supported in Courts of Equity.    "A separate estate (in the wife) may exist without the intervention of a trustee.    The husband will, in that case, take the legal estate, but equity will regard him as trustee for the wife;" 12 *Geo. Rep.* 195.    If equity so regard a conveyance, moving from a third person, why not, when the husband conveys directly to the wife, with intent, *bona fide,* to confer a benefit on her, that the conveyance is a declaration of a trust, and hold him and his representatives bound by it?    There is no conceivable reason why this should not be done, where, as in this case (according to the allegations in the bill), the property came to him through the wife, with an understanding that it should be her separate property.

That equity will often support a conveyance directly to a married woman, is well settled.

2. *Story's Equity Jurisprudence,* §§1374-5-8 *citing;* 2 *Swanst,* 106, 107; 1 *Atkyns,* 270, 271.

"The true intent of the parties will be carried into effect in equity without regard to form, and a contract is generally valid between husband and wife, without the intervention of a trustee." 1 *P. Wms.* 125, 6 *Id.* 264; 2 *Vernon,* 689.

In the case before us, the husband who executed the deeds under consideration, has departed this life.

The surviving wife is the mother of ten or eleven children, the fruit of her marriage with him.    They take an interest in remainder under one of the deeds.    The property came to him through her, from her mother and her brother, and he received it with the understanding that it should be secured to her, and always treated it as her separate property.    She is in possession of it, and has been since his death, in April, 1856.

It does not appear that the rights of creditors are at all involved.    But the administrator *de bonis non,* of the husband,

of her husband from attaching, and where, subsequently, a disagreement and separation having taken place between the husband and wife, in order to induce her to return and cohabit with him, he, in 1815, made a deed to her to this and other property, and thereupon she returned and lived with him, although such deed did not name any trustee, and was without any words settling the property for the sole and separate use of the wife, yet **it was the evident intention of the parties to create**

is endeavoring to recover the slaves conveyed in the deeds, attached as Exhibits A. & D., and their increase. Such is the case made in the bill, and we are of opinion that the demurrer should have been overruled, and the defendant required to answer, and, therefore, reverse the judgment.

## JUDGMENT.

Whereupon, it is adjudged by the Court, that the judgment of the Court below be reversed upon the ground that the Court erred in sustaining the demurrer, and dismissing the bill; this Court holding that the third instrument in the order of time, from defendant's intestate to plaintiff in error, as exhibited to said bill, is a deed, and not a testamentary paper, and that complainant took a separate estate under the first and last deeds as exhibited in which equity will protect her.

**a trust in her favor,** and from the time of the execution of the deed her possession became adverse to his, although he jointly occupied the land with her." McQueen v. Fletcher, 77 Ga. 444, 447. And see Whitton v. Jenkins, 34 Ga. 297, 304.

**TRUST CREATED IN HUSBAND FOR WIFE.** "A deed was executed in 1861 by an administrator, for land purchased at his sale, reciting that J. B., as trustee for his wife, M. B., was the highest bidder. It then acknowledges the receipt of the purchase money from J. B., trustee for M. B., and conveyed the land to J. B., trustee for M. B., his successors in office and assigns: Held, that the **deed having been made by an administrator to the husband and accepted by him,** a **separate estate in the wife was thereby created,** although there were no special words in the deed to that effect." Brown v. Kimbrough, 51 Ga. 35 (1), 38.

"**Prior to 1866 a deed to a married woman was ineffectual to pass title into her; but where** such a deed was made either by the husband or by a third party, and **the evident intent** of the parties **was that the property should be the separate estate of the wife,** although the title never passed into the wife, or, if passing into her, immediately passed to the husband, **he was deemed in equity,** although the holder of the legal title, **the trustee for the wife.** Phelps v. Brooks, 12 Ga. 195; Johnson v. Hines, 31 Ga. 720, 728; McQueen v. Fletcher, 77 Ga. 444; Follendore v. Follendore, 110 Ga. 359, 362." Webb v. Harris, 124 Ga. 726.