## BARNES v. STEPHENS et al.

A paper attested by more than two witnesses and containing three clauses, the first of which, in the form of a deed of gift, purports to convey title to land, the second of which declares the grantee shall have and hold such lands after the maker's death, together with certain described personal property not referred to in the first clause, "the burial expenses and just debts of" the maker "to be paid first," and the third clause of which declares that all of his other property of every kind shall be divided among certain other named persons designated as "heirs," calls this disposition of his property a "division," and then expressly declares all other "wills and conveyances" null and void, is testamentary in character, and does not operate to convey any present title to the land described in the first part of the instrument.

Argued March 23, — Decided April 25, 1899.

Complaint for land. Before Judge Kimsey. Dawson superior court. February term, 1898.

*H. H. Perry*, for plaintiff in error. *H. H. Dean*, contra.

LITTLE, J. John R. Stephens and four others brought an action in the superior court of Dawson county, against W. J.

Barnes, to recover certain lots of land in the 13th district of Dawson county. The petition alleges that on the 29th day of April, 1884, Benson Stephens executed a deed conveying to his wife, Mary Stephens, a life-estate in said land, with remainder to petitioners; that Benson Stephens died in the year 1885, and Mary Stephens died in October, 1895. The abstract of title sets out possession of the land by Benson Stephens for over thirty years, and a paper claimed to be a deed from Stephens to petitioners. The answer of Barnes admitted that he was in possession of the land, and the death of Benson Stephens and Mary Stephens as alleged. Barnes averred that he had been in possession of the land since 1884, under a deed executed by Benson Stephens and his wife on the 24th day of December, 1884, and that he purchased the same for a valuable consideration. The plaintiffs introduced an original paper executed by Benson Stephens, as follows:

"State of Georgia, Dawson County. This indenture, made this the twenty-ninth day of April, 1884, between Benson Stephens of said State and county, of the one part, and Mary Stephens, the wife of Benson Stephens, of the same place, of the other part, witnesseth, that the said Benson Stephens, for and in consideration of the sum of one dollar cash in hand paid, the receipt whereof is hereby acknowledged, and for and in consideration of the natural love and affection which he has and bears to her, his wife, has given, granted, and conveyed, and doth by these presents give, grant, and convey to the said Mary Stephens, her heirs and assigns, all that tract or parcel of land situated, lying, and being in the thirteenth district, first section, south half of said county, known as lot No. (316) three hundred and sixteen, (281) two hundred and eighty-one, containing seventy acres more or less, to a temporary line made by Benson Stephens to L. Q. Allen, on the northwest corner of said lot. To have and to hold said lands, after the death of Benson Stephens, during her natural life or widowhood, together with all the household and kitchen furniture; the burial expenses and just debts of Benson Stephens to be paid first, if any; then to be equally divided between the heirs as follows: John R. Stephens, Daniel S. Stephens,

Mary F. Dooley, Sarah E. Allison, and Harriett E. Hendrix, they being the heirs entitled to the above-named property at the death of said Benson Stephens. All the other property, including real and personal, except the above-named property, to be equally divided between the heirs before mentioned, it being considered by the Benson Stephens that Lewis A. Stephens and Rebecca A. Smith having received their full share of all the estate of Benson Stephens, according to the division which the said Benson Stephens now makes; and all other wills and conveyances prior to this date are null and void. In witness whereof the said Benson Stephens hath hereto set his hand and affixed his seal.      his

Benson X Stephens. (L.S.)
mark.

"Signed, sealed and delivered in presence of:

"Henry C. Thompson, Wm. H. Boggs, Charles J. Thompson, M. Cox, N. P.

"Filed in office June 26th, 1884.    Wm. H. Richardson, C. S. C.

"Recorded June 26th, 1884, Book "D," page 702.

"William H. Richardson, Clerk, S. C."

This was followed by proof of possession of the land by Benson Stephens at the time he executed the paper, and that the defendant had notice of the paper before his purchase of the land. Defendant introduced a deed from Benson Stephens and Mary E. Stephens, wife of Benson Stephens, to W. J. Barnes, dated December 24, 1884, purporting to convey to W. J. Barnes, in consideration of $1,200, the lands described in the petition. The deed contained a warranty of title, and was recorded February 13, 1885. Defendant testified in his own behalf, that he purchased this with other lands from Benson Stephens for $1,200, being the full value, and Stephens turned over to him all the papers connected with the land, including the paper introduced in evidence by the plaintiffs. Stephens then had this paper in his possession, and told witness that it was a paper which he had made to his wife and children, which was intended to pass the title, provided he made no other arrangement as to his property during his life, and that he had

made none, nor had he delivered it to any one.  Witness detailed at length the conversation with Stephens, in which the latter repeatedly said that the paper was intended to take effect at his death.  M. Cox, one of the witnesses to the paper, testified that after the execution of the paper Benson Stephens brought it to him and asked him to sign it.  The paper was then in the possession of Stephens, who acknowledged that he had executed it.  When witness had attested the paper he returned it to Stephens, who did not deliver it to any one in the presence of witness.  Witness was a notary public, and Stephens said he desired the attestation of an officer.

There was a verdict for the defendant, and the plaintiff made a motion for a new trial, on several grounds set out.  The court granted the new trial, and the defendant excepted.  The grant of the new trial was general; and we are to determine whether the court erred in setting aside the verdict and granting the new trial.  A number of grounds are set out in the motion, which it is not necessary to review in detail.  In the presentation of the case in this court counsel for the plaintiff in error contended, among other things, that the paper upon which the plaintiffs in the court below relied as title was testamentary in its character, and did not operate to convey present title to the land.  If this contention is sound, the case of the plaintiffs must fall, and the verdict which was rendered would be the only one which could, under the law and facts, be rendered, and in that case the judgment of the court granting the new trial will be set aside and the verdict allowed to stand, notwithstanding it was the first grant of a new trial.    •

Whether the paper is or not testamentary is the only question necessary to be considered.  A number of cases have, at different times, been presented to this court, which involved the question as to whether a particular instrument was a deed and conveyed title, or was testamentary in its character, and its operation postponed until the death of the maker.  Necessarily, only general rules can be laid down for the determination of this question, as in almost every case the language of the paper to be construed is different, and the determination of the effect of a particular paper depends upon the language

used, and the circumstances existing at the time of its execution. The effect. of the delivery and execution of a deed is to convey a present estate, while a will is the legal expression of a man's wishes as to the disposition of his property after his death. It is declared by the Civil Code, § 3254, that no particular form of words is necessary to constitute a will; and that in all cases to determine the character of an instrument, whether it is testamentary or not, the test is the intention of the maker, from the whole instrument, read in the light of the surrounding circumstances. It is not our purpose, in determining the question presented, to make a general citation of the cases decided by this and other courts, because each case must depend on its own facts so far as the same are expressive of the intention by which the character of the instrument is to be tested.

In the case of *Moye* v. *Kittrell*, 29 *Ga.* 677, this court in the opinion said, that the form of the instrument is evidence of the intention of the maker, and that by putting it on record the maker manifested his purpose to part with the title to the property. Another. rule laid down is, that where the words of the instrument are doubtful the court will incline to that construction which supports the instrument. *Owen* v. *Smith*, 91 *Ga.* 564. The case of *White* v. *Hopkins*, 80 *Ga.* 154, has been cited as an authority upon which the paper now before us must be held to be a deed and not testamentary in character. In that case, the instrument was in the form of a deed; it was based on a valuable consideration; it recited that the maker "granted, bargained, sold, aliened, conveyed •and confirmed unto Lewis Hopkins, his heirs and assigns," certain lands, "to have and to hold the said bargained premises, with all the rights and appurtenances thereunto appertaining, to the  .  .  said Lewis Hopkins, his heirs, executors, administrators, and assigns, in fee simple." The instrument further recited that "the title to the above-described tract of land to still remain in the said Lemuel Hopkins for and during his lifetime, and at his death to immediately vest in said Lewis Hopkins in case he and his family faithfully perform their part of the contract." It must be confessed that, tested by the rule laid down in the code, some of

the language used in this instrument would seem to character-
ize it as testamentary.    But, because of the fact that it was in
the form of a deed, that it was founded upon a valuable con-
sideration, that it warranted the title to the land, that it was
signed, sealed, and delivered, and attested by only two wit-
nesses, one of whom was a justice of the peace, this court held
it to be in effect a deed; that when the words in the habendum
clause were construed with the remainder of the instrument,
they simply reserved a life-estate in the grantor; that it was
competent for the grantor to convey an estate to the grantee
upon condition subsequent, and that by giving this paper such a
construction the whole of the instrument would stand; whereas
to construe it as testamentary would be to defeat the intention of
the grantor, as it could not be probated as a will.    The court,
however, speaking through our present able Chief Justice, as-
signed another reason why the instrument should be construed
as passing a present estate — that is, that the words in the ha-
bendum clause are repugnant to the words in the granting
clause or premises, and that therefore the habendum was void.
A similar line of construction was given to an instrument con-
sidered in the case of *Johnson* v. *Hines*, 31 *Ga.* 720, wherein the
maker, after having given, granted, and conveyed certain slaves,
added these words: "To have and to hold the aforesaid prop-
erty at my death," etc.    This case, however, was criticized by
this court in the case of *Sperber* v. *Balster*, 66 *Ga.* 317.    There,
Chief Justice Jackson, in construing the habendum clause
which followed an instrument purporting on its face to be a deed,
and which was attested by two witnesses, and in the haben-
dum clause of the instrument declared, "Said deed of gift to
be of full effect at my death," used this strong and forcible
language:    "It is only necessary to refer to the three several
habendums in this paper, to show the impropriety of applying
rules of art, in the construction of papers artistically drawn,
to an instrument so inartistically constructed.    Neither the
maker nor the draftsman, it is fair to infer, had the slightest
conception of the legal office of the habendum and tenendum
clause of a deed, and to make the intention of the first and
the expression of that intention by the latter turn on any rule

laid down in the books touching the office of the clause would be the height of folly." The court in that case construed the paper to be a will, and said, "at all events, we all hold that such is the better legal view of it; and even if the 31 *Ga.* [*Johnson* v. *Hines*, supra] should cloud the view with some uncertainty, we would not feel inclined, from such bare doubt entertained by any of us, to reverse the judgment of the able and experienced judge [Fleming] who made the ruling below."

We have been referred to the case of *Guthrie* v. *Guthrie*, 105 *Ga.* 86, as supporting the contention that the instrument now under consideration should be construed as a deed. The ruling in that case rested on the cases of *White* v. *Hopkins*, *Owen* v. *Smith*, supra, and *Goff* v. *Davenport*, 96 *Ga.* 423. The paper considered there had the form of a deed, it recited a valuable consideration, and the following language occurred in the body of the instrument: "said land to remain in the possession of the said H. J. B. Guthrie" (the grantor) "during his lifetime, and the rents and proceeds of said land to belong to said Guthrie during his life. After the death of said H. J. B. Guthrie the said Alonzo F. Guthrie" (grantee) "is to come into possession of said tract or parcel of land." This was followed by the usual habendum clause. As one of the members of this court, participating in that decision, it was with some reluctance that I assented to the construction which gave that paper the effect of a deed. I was enabled to do so only because, following the premises, which of themselves would constitute a valid deed of gift, the grantor reserved to himself possession and the rents and profits of the land during his life, and, seeking for the intention of the maker as to when the title should vest, I deemed such a reservation inconsistent with an intention that the land should pass at his death, and as expressive of the purpose of the grantor to convey by the instrument the title, qualified by the reservation for life.

We are also referred to the case of *Gay* v. *Gay*, decided at the present term of this court (108 *Ga.*), as an authority that the paper in the present case should be given the effect of passing the title in presenti. In that case the paper construed was entirely in the form of a deed. It was executed in the presence of two

witnesses, and recorded. The consideration recited was the good will and affection which the grantor bore to his son, the grantee, and for the consideration of the settlement or payment of the debts of the grantor after his decease, and for the further consideration that the grantee would support his mother, the wife of the grantor, during her natural life or widowhood, after the decease of the grantor. All and each of these expressed considerations are sufficient in law to support a contract. The instrument recited that, for these considerations, "I have given, granted, bargained, and sold at my death" certain lands described. This court held this paper to be a deed, not only because it was in the form of a deed, was signed, sealed and delivered in the presence of two witnesses, and was duly recorded, but the expression contained in the instrument that the grantee was to have and to hold the land at and after the death of the grantor expressed an intention to convey a present interest in the land, reserving possession until his death. It could not be construed that the testator intended to charge this land with the support of his widow after his death, because the words of the instrument purported to convey title at its execution, in consideration, among other things, that the grantee would support his mother after the death of the grantor. There need not be any consideration to make a devise good. There must be to render a deed valid. Therefore when the grantor, for an expressed consideration which was an undertaking on the part of the grantee to pay such debts as the grantor was owing at the time of his death, and for the further consideration that the grantee undertook *then* to support and maintain the widow after his death, conveyed the land but reserved to himself possession during his life by declaring that the grantee should have the land at his death, having in the first part of the instrument conveyed the land, and subsequently to the clause of reservation warranted the title, it was both fair and logical to hold that the instrument conveyed a present interest in the land.

The result of the examination of these cases for precedents is, that, so far as general rules are concerned, we come back, almost unaided, to the plain language of our code, that "the

test is the intention of the maker, from the whole instrument, read in the light of surrounding circumstances." The instrument presented to us contains three clauses. The first is, in form, the premises of a deed. It is called an "indenture." A party of the first part and a party of the second part are named. The consideration expressed is a good one — that of the natural love and affection which the grantor bears to his wife. It recites that he has given, granted, and conveyed the land in question. If this paper contained no further recital, its meaning would be plain. It would be a deed of gift of the land, and if it possessed the requisites as to execution, the effect would be to convey to the grantee, in presenti, title to the land described. The second clause of the instrument was designed to be the habendum clause. An examination of its language, however, shows that the grantor intended that the grantee should have and hold the lands after his death and during her life or while she remained a widow. Not only so, but it prescribed that, in addition to the lands, she should have and hold all the household and kitchen furniture after the death of the maker, but that his just debts and burial expenses should be first paid ; provisions to which the first or granting clause of the instrument can not be made applicable. A fair interpretation of this clause is, that after the death of the maker his wife should have, during her life or widowhood, an estate in the lands conveyed in the first clause of the instrument, that she should also have all the household and kitchen furniture which he possessed ; but that before she could take any interest in said land or furniture, his just debts, such as he might be owing when he died, and his burial expenses, should be paid out of this property before the wife took any interest in it. Not only so, but he provided in this clause that after the termination of the estate of his wife in the property, the remainder should go to five other persons whom he denominates as his heirs and entitled to the same at his death. All these might, under the adjudicated cases, be held to be consistent with the conveyance of a present estate, but the third clause clearly manifests the intention to make a testamentary disposition of all his estate. He provides that all other property, including real and personal,

except above-named property, is to be equally divided between his heirs named in the second clause of the paper. This is equivalent to a devise of the residuum of his estate, after the devise of the special legacies in the first and second clauses. The further language of this third clause makes such meaning plain. He says, "it being considered by Benson Stephens that Lewis A. Stephens and Rebecca A. Smith having received their full share of all the estate of Benson Stephens, according to the division which the said Benson Stephens now makes." The purpose indicated by this paper is to divide all of his estate, of which the property claimed to have been conveyed forms a part.

But the intention of the maker is still further manifested — he revokes all other wills and conveyances made prior to the execution of this paper. Such a revocation is proper and appropriate in a will, but inappropriate in a deed of conveyance. Not only so, but when executed this paper was signed, sealed, and delivered in the presence of three witnesses, thus entitling it to probate as a will. It is fair, however, in this connection, to call attention to the fact that subsequently, and while the paper was in his possession, he sought a notary public and acknowledged the execution of the paper and obtained his official attestation to the same, and that he then had the paper recorded. In this instrument there is no express or implied reservation of title in the maker during his life, neither to the land described in the first clause, nor to the other property described in the second. In the case of *Sperber* v. *Balster*, supra, this court said, "The very fact the deed of gift is to have full effect in express words at the death is potent to show the meaning of the donor. No life interest—no possession for life is anywhere reserved. Such a thing is not hinted at. It can not for a moment be thought that the maker intended to strip himself of home, furniture, and stock, all he possessed, and leave himself naked, without the reservation of either title or possession, until he ceased to need anything by going to the unseen world and ceasing to be an inhabitant of this. Therefore, saying, as he does, nothing in this instrument of a reservation to himself of any use or possession, and using words to show that the paper, as to the gift of the land, is to take effect at death,

and that other property conveyed in the same language could not pass to the beneficiary until the death of the maker, seems to us to leave little doubt of the real intention of the maker."

We construe this instrument as a whole, and must necessarily do so to arrive at the intention of its maker. But little is known of the surrounding circumstances. Evidently the maker of the instrument thought, for reasons satisfactory to himself, that it was proper to make a division of his estate and to declare that certain of his heirs had received their full share. That the paper was recorded does not change its character. That the subsequent attestation of a notary public was added can not have any bearing on his original intention, because at its making it was executed in the presence of three witnesses, the number required for the proper execution of a will. The original paper was subsequently to its execution in the possession of the maker. Finally, he sold and conveyed the land described in the instrument, and received for it a valuable consideration. Seeking the intention of the maker in the words and arrangement of the paper, reading it in the light of the surrounding circumstances, we must hold that the paper is testamentary in its character, that no present interest was intended to be conveyed at the time of its execution, and that it did not have the effect to vest title to the land which it describes, in the plaintiffs. This being true, the verdict rendered by the jury was demanded by the evidence, and the court erred in granting a new trial.

*Judgment reversed. All the Justices concurring.*