## GRAMLING, SPALDING & COMPANY *v.* POOL.

1. Any plea or suit for the recovery back of usury voluntarily paid by a debtor to his creditor must be brought within a period of one year after such payment is made.    Hence, in a contest between two creditors over the assets of their insolvent debtor, one creditor can not make the other account for usury voluntarily paid him by the debtor before insolvency, without instituting proceedings for this purpose within twelve months from the time of such payment.
2. The instructions requested, so far as legal and pertinent, were sufficiently covered by the general charge given to the jury, and the failure to charge in the precise language requested is not cause for a new trial.
3. While the evidence upon the sole issue submitted to and passed upon by the jury was decidedly conflicting, that introduced for the defendant in error was sufficient to support the verdict, and it does not appear that the same was contrary to the charge of the court.

Argued April 28, — Decided June 7, 1900.

Money rule.    Before Judge Janes.    Douglas superior court. November term, 1899.

*J. H. McLarty* and *J. S. James*, for plaintiffs.
*W. A. James* and *A. L. Bartlett*, for defendant.

LEWIS, J.    It appears that the litigation between the parties to this case has been pending in court for a number of years. The plaintiffs in this case filed their bill in December, 1885, as creditors by open account of the firm of Turner & Hudson, against said firm, which was composed of G. R. Turner and Allen Hudson, and also against W. H. Pool and others, for injunction, receiver, and other equitable relief.    That bill, among other things, alleged that Turner and Hudson were insolvent traders, and attacked as fraudulent and void a deed from G. R. Turner to W. H. Pool, dated March 19, 1884.    That case came to this court, and is reported as *Pool* v. *Gramling*, 88 *Ga.* 653. It seems from that case it was decided that the deed from Turner to W. H. Pool was executed and held for the purpose

of delaying and defeating the collection of debts due by Turner & Hudson to complainants and other creditors; that Pool held an absolute deed to the property to secure a debt, with his bond to reconvey outstanding; that upon the debtor afterwards becoming insolvent, Pool took the property in payment of the debt, the value of the property being largely in excess of the debt. On this branch of the case it was decided by this court that the other creditors might have the property administered in equity as the assets of an insolvent, and the proceeds applied first to the secured debt, and the surplus to their own claims. The present case is an ancillary proceeding brought to the May adjourned term, 1896, of court, by the same plaintiffs against the defendants, Turner & Hudson, W. H. Pool, et al., in which it is alleged that the property described in the original bill in the case had been sold under the decree rendered therein by the commissioner appointed by the court for that purpose, and brought the sum of $2,100, the terms of sale being one third cash, and the balance in one and two years, payments drawing 8% interest per annum from date; that the commissioner had collected the cash payment of $700.00, and had instituted suit on the notes given by Mrs. Mary W. Turner for the balance due in one and two years after date; that before the final trial of the case in the Supreme Court Pool had charge of the premises sold as set out in the original suit, and received more rents and profits arising from said property than his entire debt against Turner & Hudson amounted to, and that he should pay back to complainants the sum of $300.00 for rent on said property, which he received over and above the amount of the debt claimed by him against G. R. Turner. The petition prayed that the matters therein referred to be inquired of by the court, and a final distribution of the money be had in the case as originally directed in the decree, and that said Pool be required to account for all moneys and rents which had gone into his hands. Petitioners amended by alleging that G. R. Turner gave to Pool his note for $50.00 as interest on $600.00 for eight months from date, and that in the fall of 1885 Turner paid off the $50.00 note, which was $16.00 more than eight per cent. per annum on the amount borrowed. This balance was claimed as a set-off against the principal sum of $600.00.

The jury on the trial of the issue formed by this case returned a verdict in favor of W. H. Pool for $729.78; whereupon plaintiffs made a motion for a new trial, and except to the judgment of the court overruling the same.    In the judgment overruling this motion it was ordered by the court that counsel for Pool write off of said verdict and judgment the sum of $65.80, in obedience to which order that amount was written off.

1.    In one ground of the motion for a new trial it is alleged that the court erred in refusing to charge the jury, as duly requested by plaintiff's counsel in writing, as follows: " If you believe from the evidence that G. R. Turner, on the 21st day of March, 1884, borrowed from W. H. Pool the sum of $600.00, and gave to Pool his note for $50.00 as interest on same date, and that this note was given as interest on $600.00 for eight months' time, beginning on the 21st of March and due 21st of November, 1884, and you further believe that Turner paid the $50.00 in fall of 1885, and took up the note, I charge you that all over eight per cent. on the $600.00 for eight months would be usury, and you ought to credit Pool's debt with such usury at the time it was paid in 1885."    Exception is further taken in the motion to the following charge of the court: "I will state here that the $50.00 note has nothing to do with the case.    That has already been paid, settled and gone into, and you need not consider it in any way."    There seems to be no dispute in the testimony introduced on the trial that Pool actually made a loan of $600.00 to Turner, and that he took his note for $600.00 principal, and also took another note for $50.00 due in six months, which was stated by Turner to be a premium for the loan of $600.00.    There is no question that the $50.00 note was really usurious, and that as such it was paid in the fall of 1885, several years before the institution of this proceeding to make the creditor account for the usury.    It does not appear that when Turner paid the $50.00 note he was insolvent.    Hence we think the claim of forfeiture of this usury has long since been barred by the statute of limitations.    By the act of February 24, 1875 (Acts of 1875, p. 105), entitled "An act to regulate and restrict the rate of interest in this State, and for other purposes therein mentioned," after providing that it should be unlawful to charge or take any interest greater than 12% per annum, and any one vio-

lating this provision should forfeit the interest so charged or taken, it was provided further, " That any plea or suit for the recovery of such forfeiture shall not be barred by the lapse of time shorter than one year." The act approved December 11, 1871 (Acts of 1871, p. 75), made the period of limitation for a forfeiture of usury charged six months; and the act of 1875, which is embodied in the Civil Code, § 2891, simply intended to extend the period of limitation prescribed by the act of 1871 from six to twelve months. In the case of *Cheapstead* v. *Frank*, 71 *Ga.* 549, it was decided that the statute of limitations in reference to any pleas or suits for the recovery of usury paid is applicable to suits to recover usury which has been paid, or to a set-off claiming such a demand. This decision had reference to the act of 1875, above cited. In the case of *Lilly* v. *DeLaperiere*, 76 *Ga.* 348, there seems to have been a question on the mind of Justice Blandford as to whether this act of 1875 was repealed by the act of October 14, 1879. Acts of 1879, p. 184. This question was finally adjudicated by this court in *Johnson* v. *Southern Asso.*, 97 *Ga.* 622, which held that "Section five of the usury act of February 24, 1875 (Acts of 1875, p. 105), now embodied in section 2057 (e) of the Code [of 1882], was not repealed by the usury act of October 14, 1879 (Acts of 1878–1879, p. 185), and consequently an action for the recovery of money paid as usury must be brought within one year from the time such payment was made, or the same will be barred." Besides, section 2057 (e) of the Code of 1882, construed by that decision, is now embodied in the present code, and would stand as law, even if there had been an effort to repeal the same by the legislature of 1879. It follows from the above that the debtor himself could not have recovered back this usury he voluntarily paid his creditor, either by suit therefor, or by plea and set-off, unless he had instituted his action within twelve months from such payment, and of course the law confers upon his creditors no greater right than it does upon the debtor in such a matter.

2. Another ground in the motion for a new trial is that the court erred in refusing a request of plaintiffs' counsel to charge as follows: " If the jury believes from the evidence that G. R. Turner could have rented the storehouse for the term of five

years at $12.00 per month, and went to W. H. Pool and tried
to get him to allow the storehouse to be rented, and pay the
same on the $600.00 note held by W. H. Pool against G. R.
Turner, and you further believe that Pool refused to do so and
continued by himself or his tenant to occupy and keep posses-
sion of the premises, he would be bound to account for the rent
for the five years at the rate of $12.00 per month." It is true
the record disclosed that Turner did testify in effect that he had
been offered for five years rent of the premises the rate of $12.00
per month. It was denied on the other hand that such an offer
was ever made known to Pool. It appears from the record that
in his general charge to the jury the court instructed them to
the effect that if they believed from the evidence that Pool had
by himself, or those under him, occupied the premises in ques-
tion, he would be responsible for whatever rent he had received,
or ought to have received by the use of ordinary care and pru-
dence; and if others occupied the storehouse with his consent,
he would be bound to account for whatever rent the evidence
shows the same to be worth. He further instructed them that
they should determine from the evidence how long Pool held
this property after it was turned over to him by Turner, how
long any one held it under him, and if while in his possession
and control any one used the property by his consent, or he al-
lowed it to be done, he would be responsible for the rent while
it was so held, and they should charge him rent for whatever
amount the evidence may show it was worth. There was con-
siderable conflict in the testimony as to what this property was
worth for rent, some testifying to its only being worth $4.00 or
$5.00 per month, and others to sums in double that amount.
The request which the court refused to give had reference to
the testimony of one of the witnesses for the plaintiffs. It
would have been equally as proper for the court to have spe-
cially charged a theory upon the testimony of any other witness
in the case. Instead of going into details of this sort, where a
number of witnesses were sworn on either side and were in con-
flict, we think the trial judge pursued the better course in giv-
ing the general instructions to the jury above stated, which fully
covered the issues involved between the parties touching the
amount of rents that should be chargeable against the defend-

ant; and we do not think, therefore, a failure to give this special request with reference to the testimony of a particular witness is cause for a reversal of the judgment refusing a new trial.

3. There are several other grounds in the motion for a new trial, some complaining of the verdict being contrary to the charge of the court, and also contrary to law and evidence. There is also a ground in the motion for a new trial, because the jury failed to allow a credit of $35.00 paid by Mrs. Turner on January 10, 1888, which Pool admitted should go as a credit on his claim.    We do not know by what calculation the jury arrived at its verdict, and can not say whether they allowed that credit or not in their findings.    The evidence in the case was conflicting, not only as to the value of the premises in dispute for rent, but also as to the time in which Pool was properly chargeable with the rent, plaintiffs contending that he was in possession until the sale by the commissioner, which was in 1893, eight years from the time he first acquired possession, the defendant introducing testimony tending to establish the fact that he abandoned possession of the storehouse in question about the time of the decision by this court in the case, which was rendered in 1891.    What amount per month and for what length of time the jury credited his claim with rent do not appear from their verdict, which was simply one of a general nature.    Besides this, the court required Pool's counsel to write off from the verdict an amount exceeding the credit which plaintiffs claim the jury failed to allow; and it may be that in ordering this deduction the judge intended to provide for the payment of that credit as well as some others which, in his judgment, might have been omitted.    The sole issue in this case was passed upon by the jury under testimony that was decidedly conflicting, the main issue being as to what rents or profits the defendant Pool was chargeable with under the evidence presented both for plaintiffs and defendants.    After carefully reading the testimony, we think that introduced in behalf of the defendant in error was sufficient to support the verdict, and we can not say that there was anything to indicate that the verdict was contrary to the charge of the court.    This was really a jury contest.    It does not appear that any error of law was committed on the trial, and where in an issue of fact there is any evi-

dence to sustain the finding of the jury, the invariable rule of this court is not to interfere with the discretion of the trial judge in overruling the motion for a new trial, though the record may tend to indicate a preponderance of the testimony in favor of the unsuccessful party.

*Judgment affirmed. All concurring, except Fish, J., absent.*