# CASES

### DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

#### AT THE

## MARCH TERM, 1917.

---

### 8238.  LANKFORD *v.* PETERSON, executrix.

1. Where an obligation palpably infected with usury contains a mortgage to secure its payment, and also contains an agreement that the debtor shall procure a loan from a third person on the same property, to be secured by a deed which is to be superior to the mortgage, and shall then assign to the mortgagee, as additional security, the bond to reconvey, received by the debtor from his grantee under the security deed, neither the obligation to make such assignment, nor its subsequent consummation, will operate to merge or otherwise render invalid the mortgage lien.

2. Where the consideration of an obligation is not definitely ascertained at the time of its execution, or consists of contingent liabilities or advances to be thereafter made, it is incumbent upon the holder thereof to show the amount thus actually advanced. This burden was met in the present case. There being no conflict in the evidence, the proof submitted demanded the verdict directed by the court.

3. The statute of limitations relating to the forfeiture of usurious interest has reference to a set-off claiming such forfeiture,' and to suits to recover usury which has been paid. Thus, where usurious interest has been paid and applied as such, the statute is applicable in a suit brought on the obligation. But when not otherwise directed by the debtor, payments made on a debt infected with usury will be applied first to the payment of the legal interest due at the date of the payment; and any balance remaining after such interest is discharged will go in reduction of the principal. A plea alleging such payment may be properly filed although more than twelve months have elapsed since the payment.

DECIDED SEPTEMBER 18, 1917.

Foreclosure of mortgage; from Coffee superior court—Judge Summerall. February 9, 1916.

W. C. Lankford and B. Peterson entered into the following agreement:

"Georgia, Coffee County.

"This agreement or contract, made and entered into this 4th day of May, 1912, by and between B. Peterson, as party of the first part, and W. C. Lankford, as party of the second part, witnesseth:

"That whereas W. C. Lankford is the owner of all that tract of land in the city of Douglas, being seventy-three feet, more or less, east and west, by two hundred ten feet north and south, in the form of a parallelogram, and bounded on the north by Ward street, and east by Tanner street, south by Sycamore street, and west by a straight line beginning ten feet east of Douglas Surgical Institute and Infirmary on Ward street, and running due south:

Whereas said W. C. Lankford has heretofore made a contract with the Empire Construction Company to erect on the northern one third of said tract of land, a building (fireproof) of re-enforced concrete construction, three stories in height, at a cost of twenty-five thousand dollars ($25,000.00), which is to be completed within six months from this date;

"And whereas W. C. Lankford has negotiated and obtained a loan of $12,000.00 from the Security Life and Annuity Company of Greensborough, N. C., which said loan has not yet been funded, and security deed therefor not yet having been made, which money is to be used in the construction of said building;

"Whereas B. Peterson, party of the first part, is willing to furnish ten thousand dollars ($10,000.00) to be used in the construction of said building, and W. C. Lankford is desirous of obtaining said money to be so used;

"Therefore, be it agreed as follows:

"First. That said B. Peterson is to furnish the sum of $10,-000.00 to said W. C. Lankford to be used by him in the construction of said building; said money to be furnished from time to time as needed by said W. C. Lankford during the period of time necessary for the construction of said building, in amounts not to exceed $2,500.00 during the month of May, $2,500.00 during the month of June, $2,500.00 during the month of July, and $2,-500.00 during the month of August; no money to be advanced by the said B. Peterson until the said W. C. Lankford has finally closed the matter of securing a loan of $12,000.00 from said life insurance company, and until said life insurance company has paid at least $3,000.00 of said loan to W. C. Lankford to go in

said building.  Then and in no event is the said B. Peterson to furnish more money to be used in the construction of said building than is furnished by the said life insurance company, and used in said building.

"Second.  It is furthermore agreed that the loan deed, or mortgage, executed by the said Lankford to the said life-insurance company shall be a first lien upon the said property, and that this contract and agreement shall be second to said loan deed to the said insurance company.

"Third.  It is further agreed that said B. Peterson shall have a lien on the said building and upon said entire tract of land to secure the payment to him of the said money so advanced, and of all rents due him in accordance with this contract, and due him in any way, or for any purpose under this contract.  And the said W. C. Lankford does hereby convey, sell, and mortgage to said B. Peterson said tract of land and all buildings placed thereon, and does hereby create a lien on said property to the said B. Peterson for said purpose.

"Fourth.  It being further agreed that said B. Peterson shall receive for the use of said money two fifths of the rents received from said building by said W. C. Lankford for his two-fifths interest in said building; it being agreed that, inasmuch as he furnishes two fifths of the money that is to go into said building, he is to own two-fifths interest in said building, subject to be divested as is hereinafter set out, and with a lien on the entire property as heretofore set out, and subject to be divested as hereinafter detailed; it being furthermore agreed that said W. C. Lankford is to guarantee the rental value of said building to be $300.00 per month, that is to say, that the said W. C. Lankford is to pay to the said B. Peterson the sum of $120.00 per month as his part of the rents from said building, be the amounts so received more than $180.00 per month or less.

"Fifth.  It is agreed that during the construction of said building that W. C. Lankford is to pay $30.00 per month for the first month said building is under course of construction, $60.00 for the second month, $90.00 for the third month, and $120.00 for the fourth month, and each month thereafter; said amount to be paid to the said B. Peterson as his part of the rents of said building, or part of building during said time.

"Sixth. It is furthermore agreed that after twelve months from the date hereof the said W. C. Lankford shall be permitted to pay B. Peterson the $10,000.00 either in whole or in sums of $2,500.00; a proportionate part of the rent herein contracted to be paid by the said W. C. Lankford to the said B. Peterson to cease upon the payment of such amount, or amounts, that is to say, for each $2,500.00 so paid, one fourth of said amount of rent to be no longer due to said B. Peterson each month and collectible by him.

"Seventh. It being furthermore agreed that the said W. C. Lankford is to pay back to B. Peterson all of said amounts and including any other advances or payments made by said Peterson on or before two years from the date hereof.

"Eighth. It being furthermore agreed that should any of said amounts of rent or other charges hereinafter fall due from said W. C. Lankford to B. Peterson and be not paid for as much as 30 days, then the said B. Peterson shall be permitted to require the said W. C. Lankford to purchase from him his interest in said building and to pay the sum of $10,000.00, all accrued rents or other charges hereunder to date of foreclosure and sale, and 10 per cent. of said amounts as attorney's fees for collecting by law or foreclosure of power of sale, or in default thereof said property may be sold as hereinafter provided.

"Ninth. It being furthermore agreed that, if at any time the said B. Peterson shall be authorized to demand the payment of said $10,000.00 and the rents or other charges hereunder so due of the said W. C. Lankford unless the said W. C. Lankford then and there promptly pays the same, the said B. Peterson is authorized and empowered to advertise for sale the said tract of land and all buildings thereon by inserting a notice of said sale in the Douglas Enterprise, or some other newspaper published weekly in Coffee county, Ga., once a week for four weeks, and sell said property before the court-house door in Douglas, Ga., and make and execute a good deed to said property and all buildings located thereon subject to the said loan deed hereinabove mentioned and referred to.

"Tenth. Be it further agreed that the said B. Peterson, his executors, administrators, or assigns, shall be authorized, and they are hereby granted power of attorney to make deed at such sale

as fully and completely as W. C. Lankford could do if acting in person.

"Eleventh.   It being further agreed that the said B. Peterson, his executors, administrators, or assigns, shall be authorized to bid at said sale and to purchase said property, provided they see fit and proper to do so.

"Twelfth.   It being agreed that should said property be so sold, and should be enough more than to pay the said B. Peterson the sum of $10,000.00 for his interest in said property and all rents and other charges due him hereunder, due him on said date, then and in that event such balance should be paid to said W. C. Lankford, his executors or administrators. .

"W. C. Lankford does hereby agree and contract to buy back from the said B. Peterson at the end of two years the two-fifths interest of said B. Peterson in and to the said property for the sum of $10,000.00 plus amount of any other advances made by said B. Peterson.   Said B. Peterson agrees to sell the two-fifths interest for said amounts; it being agreed that should W. C. Lankford fail to make said purchase, that then and in that .event the said B. Peterson, his administrators or assigns, shall be authorized to exercise the power of attorney and sale hereinbefore granted.

"Thirteenth.   It is hereby covenanted and agreed that said Lankford shall proceed promptly and in good faith to erect and complete said three-story re-enforced concrete fireproof building substantially in accordance with the plans and specifications therefor already drawn for and accepted by the said Lankford, and that he shall use in the construction and completion of said building the said sums of $12,000.00 obtained from said life-insurance company and the $10,000.00 so obtained under and by virtue of this contract from said B. Peterson, to which he shall add and use in the construction of said building an additional sum of $3,000.00 to be put in and contributed by himself, the said Lankford, in addition to which the land described is to be added.

"Fourteenth.   It is further covenanted and agreed that only the mortgage or deed to secure debt from said Lankford to said life-insurance company for the said sum of $12,000.00 shall take priority over the interest and lien of the said Peterson in and over said property as set out and referred to in this instrument, and subject only to the provisions of this contract.   It being especially

understood and agreed in this connection that all claims or liens for material and labor contracted for in connection with the construction of said building shall be paid promptly by the said Lankford, and certificates or other proof satisfactory to said Peterson shall· be furnished regularly from time to time by the said Lankford and the superintendent or contractor of said building when said sums of money hereinbefore referred to are paid over by said Peterson, showing that all such claims for labor, material, or other costs of construction of said building have been paid to such date and that the money advanced has been used in said building. In the event that there should be a failure or refusal upon the part of the said Lankford to pay off and satisfy any such claims, then the said Peterson may, at his option, pay óff· any such and have said building completed, and for any sums thus advanced ·he shall have the same interest in the lien upon said lands and building as is elsewhere provided herein in his behalf for his protection as to the advance of the said $10,000.00, or as to the rents due him. Said Lankford shall likewise be bound and required to keep said building properly insured, both before and after it is completed, said Peterson to have protection and benefit of said insurance, second only to said insurance company, and shall pay all premiums therefor, and also all taxes or other charges thereon, but should he fail or refuse to do this, then the said Peterson shall, at his option, pay off and keep up such insurance or taxes, and shall have the same lien and the same remedy for collection as is elsewhere provided in this paragraph for the other charges herein provided for, and for the better securing said Peterson in the collection of either or any of the items herein mentioned, which he may assume or pay off, it is understood that the power of sale hereinbefore provided for in behalf of the said Peterson shall cover and embrace any sums thus paid, and may be invoked in the collection thereof to the same extent as it may be used or invoked in the collection of the other advances made under this contract.

"Fifteenth. As a part of the same consideration of this contract it is further agreed and provided that any bond for title or contract to reconvey upon the part of the said life insurance company which may be excepted and delivered to the said Lankford shall· be transferred and assigned by the said Lankford to the said Peterson for the purpose of affording additional security for

the said advances made by the said Peterson as contemplated and covered by this contract; which bond for title or other contract to reconvey shall be reassigned and transferred back to said Lankford by said Peterson upon the payment to said Peterson of each and all of the sums and charges due under and by virtue of this contract, but to remain in full force and effect for the said Peterson in the meantime, during which time said Peterson shall be subrogated to all of the rights of the said Lankford therein and thereto.

"Signed, sealed, and delivered in duplicate this the day and year first above written.

"C. R. Tidwell,                      "B. Peterson,

"J. T. Relihan,                      "Party of the first part.

  "Not. Pub. Coffee Co., Ga.      "W. C. Lankford,

                                   "Party of the second part."

This instrument was duly recorded in clerk's office of Coffee county, on June 6, 1912. Peterson, treating the contract or agreement as a mortgage, proceeded to foreclose it as such in the superior court of Coffee county. Subsequently to the issuance of the rule nisi, the petitioner having died, his executrix, Mrs. Vicey Peterson, was at the next term made plaintiff in the proceeding. The defendant filed a demurrer and an answer. The grounds of the demurrer were that the contract was a deed, and not a mortgage, and could not be foreclosed as a mortgage; and that the instrument was void and of no effect as a security deed, in that it sought to secure the payment of money advanced at a usurious rate of interest. This demurrer was overruled. The plea denied the indebtedness in general terms and made the same contention as to usury as has been already indicated, and set up that the instrument was but an agreement to transfer title as security for a usurious transaction. The plaintiff demurred to the answer, on the ground that a recovery of the usurious payments of interest was barred by the statute of limitations governing such payments; and demurred to the conclusion of the pleader that the instrument was a deed. The court sustained the demurrer to the plea relating to the usurious payments of interest, "in so far as all alleged payments by the defendant [are] concerned which are alleged to have been made prior to September 6, 1914; that is to say, such payments alleged to have been made more than twelve

months before the filing of said plea," and also sustained the demurrer to the plea setting up the defense that the instrument in question was not a mortgage, but a deed.

On the trial the plaintiff introduced in evidence a supplemental contract or entry made on the instrument which it was sought to foreclose, as follows: "The interest due on the within and foregoing mortgage has been satisfactorily arranged and paid to November 1, 1914, and it is hereby agreed that said mortgage and the indebtedness secured thereby shall, from and after said November 1, 1914, bear interest at the rate of 8% per annum, thus superseding the original plan in said mortgage as to payment of said interest by rents collected. In testimony whereof we have hereunto set our hands and seals, this February 1, 1915.

"B. Peterson (L. S.).
"W. C. Lankford (L. S.).

"Signed, sealed, and delivered in presence of:
"F. W. Dart.
"J. T. Relihan, Not. Pub. Coffee Co., Ga."

The defendant sought to amend his answer by setting out that the contemplated loan to Lankford by the Security Life and Annuity Company, mentioned in the agreement, had been in fact subsequently consummated, that a bond for title was made by that company to Lankford, conditioned to reconvey the said property on the payment of its debt, and that on this bond the following assignment was executed:

"Georgia, Coffee County.

"The within and foregoing bond for title is hereby transferred to B. Peterson and the interest in the land herein described is transferred to said B. Peterson to guarantee the performance of the attached contract by W. C. Lankford; the land described within to be conveyed to W. C. Lankford by B. Peterson upon performance by W. C. Lankford of said contract; and it is agreed that this bond shall be attached to said contract and become part thereof. The consideration of this contract and transfer is the same consideration as that mentioned in said contract.

"In witness whereof I have set my hand and seal this Oct. 1, 1912.

"W. C. Lankford (L. S.).

"Witnessed by:
"J. T. Relihan, Not. Pub.. Coffee Co., Ga."

On objection of the plaintiff this amendment was disallowed. When the loan deed and the bond, with the assignment thereon, were offered in evidence they were excluded by the court. "It was admitted by plaintiff and the defendant and their attorneys that W. C. Lankford paid to B. Peterson the following amounts on the following dates: $30 on June 1st, 1912; $60 on July 1st, 1912; $90 on August 1st, 1912; $120 on September 1st, 1912; and also $120 on the first of each month thereafter up to and including November 1st, 1914. It was admitted by attorneys for the plaintiff that of the payments made by W. C. Lankford within twelve months prior to the filing of his plea in said case, only 8% should be applied as interest, and that the sum of $160.66 was therefore written off of the payments for September and October, 1914, and allowed as a credit on the interest accruing thereafter, leaving a balance of interest of $910 to date of trial." The court directed a verdict against the defendant for the principal sum of $10,000, and for $910 as interest to date of judgment, and also in favor of the foreclosure of the said paper as a mortgage, and that the equity of redemption be forever barred, and a rule absolute granted. Judgment was entered accordingly. The defendant assigns error as follows: " (a) That the court committed error in holding that the contract and agreement sought to be foreclosed is a mortgage and can be foreclosed as such. (b) That the court committed error in holding that said paper is anything more than a mere contract between the parties thereto providing for the doing of certain things by said parties and conveying title to certain premises to the party of the first part mentioned therein by the party of the second part to secure certain advances of money to be made by the party of the first part at an usurious rate of interest. (c) That the court committed error in directing a verdict in favor of the plaintiff for any amount; the plaintiff having introduced only an executory contract or promise on the part of the party of the first part therein to advance certain moneys to the party of the second part provided the party of the second part did certain things as therein mentioned, and there being no evidence whatever that the party of the second part ever did the things therein mentioned to be done, and there being absolutely no evidence that the party of the first part advanced or furnished any money whatever under

said contract to the party of the second part, and there being no
evidence that the plaintiff or her testator furnished any amount
of money whatever at any time to the defendant.  (d) That the
court committed error in holding that of the payments made by
the defendant all should be applied as rent or interest, and none
applied as a payment against the principal, except such of said
amounts as were in excess of eight per cent. and as were paid with-
in twelve months prior to the filing of the plea of the defendant,
and committed error in holding that the plaintiff would be en-
titled to eight per cent. in the future on the sum of $10,000, or
on any amount." Exception is also taken to the action of the
court in overruling the defendant's demurrer, in sustaining the
plaintiff's demurrer to the defendant's plea as indicated, in re-
fusing to allow the defendant's proffered amendment to the plea,
and in excluding from evidence the security deed from Lankford
to the Security Life and Annuity Company, and its bond to re-
convey, with the assignment to Peterson thereon.

*Lankford & Moore, Little, Powell, Smith & Goldstein,* for plain-
tiff in error.

*Dickerson, Kelly & Roberts, F. Willis Dart,* contra.

JENKINS, J. (After stating the foregoing facts.)   1.  If the
instrument sought to be foreclosed was a mortgage, the fact that
the obligation on which it was based was infected with usury
would not render it void.  *Dwelle* v. *Blackwood,* 106 Ga. 486 (32
S. E. 593) ; *Moseley* v. *Rambo,* 106 Ga. 597 (32 S. E. 698).  Under
the law then of force, a security deed so infected was absolutely
void.  By the terms of the supplemental agreement entered into
between Lankford and Peterson, as set out above, as well as by
the terms of another agreement signed by each of the parties,
which was set forth in the amended pleadings, the instrument
sought to be enforced was specifically and repeatedly referred to
as a mortgage.  We think, however, that if by the terms of the
original instrument it were apparent that the intent was then to
execute a deed and not a mortgage, such a mere subsequent desig-
nation would not operate to change the nature of the original in-
strument, in the absence of such a new valid contract as could be
taken to supersede the old agreement and substitute a new and
different one. 27 Cyc. 969, 970.  It is now the settled policy of
the law that an instrument can not seek to retain title to property
for the purpose of securing the purchase price thereof and at the

same time create a mortgage on the same property. *Bacon* v. *Hanesley,* 19 *Ga. App.* 69 (90 S. E. 1033). In that case it was held that such an instrument operated only as a reservation of title. It is true that in the case of *Smith* v. *DeVaughn,* 82 *Ga.* 574 (9 S. E. 425), cited in the *Bacon* case, certain earlier cases are distinguished on the ground that in those cases the title to the property sought to be conveyed was in the defendant; but in *Wynn* v. *Tyner,* 139 *Ga.* 765 ('78 S. E. 185), Justice Lumpkin, speaking for the court, said: "Just how the same instrument can convey title and not convey title at the same time, or retain title and not retain title but be a mere lien, as to the same property and the same debt, is not plain. It would seem to be an effort to reconcile the irreconcilable." We are therefore of the opinion that if, by the terms of the instrument we are seeking to construe, it was sought to give concurrently a mortgage and a valid security deed, both could not be treated as valid, but the latter would prevail. By the third paragraph of the instrument it clearly appears that the intent of the parties was to create a mortgage lien upon the entire property. Under the terms of the fourth paragraph, Peterson is to "own a two-fifths interest in the building" proposed to be constructed; and at the same time was to have a lien on the entire property. It is apparent, and it is not denied by either of the parties, that this provision of the contract was merely a scheme to cover up the payment of usury under the name of rent. The defendant attacks the instrument as a conveyance, on this ground, and the plaintiff claims no benefit thereunder. Would the abortive and palpably illegal attempt to thus pass title in this portion of the improvements operate to annul, either in whole or in part, the valid lien by mortgage clearly created, where it is plain from the instrument that the intention was not so to do? We do not think so. In *Coleman & Burden Co.* v. *Rice,* 115 *Ga.* 510 (42 S. E. 5), where an assignment or transfer by an insolvent debtor to a named trustee, with power of sale, was held to be void on account of the illegal reservations, and as a consequence an execution of the power conveyed no title to a purchaser, the court laid down the following rule: "If, however, the purchaser at such attempted sale, at the time of the transfer, held a valid lien by a mortgage on the property he sought to purchase, and neither before nor after such sale gave

up, relinquished, or canceled his lien, or agreed or intended to do so, there was no merger of the lien with the title sought to be conveyed, but the same remained intact, and capable of enforcement. Aliter, if he did, as a consequence of his purchase, cancel and relinquish his lien, or if he intended to do so." In the instant case we are furthermore much inclined to think this provision of the instrument now under consideration did not pass title to the two-fifths interest in the improvements, for the reason that the agreement within itself contains a defeasance clause, —not the provision that the two-fifths interest is to be divested by Lankford buying it back and Peterson's agreement to reconvey on the payment of the advances, for this does not amount to a defeasance clause (*Pitts* v. *Maier,* 115 *Ga.* 281, 41 S. E. 570), but section six, in which it is "agreed that after twelve months from the date hereof the said W. C. Lankford shall be permitted to pay B. Peterson the said $10,000.00 either in whole or in sums of $2,500.00; a proportionate part of the rent herein contracted to be paid by the said W. C. Lankford to the said B. Peterson to cease upon the payment of such amount, or amounts, that is to say for each $2,500.00 so paid, one fourth of said amount of rent no longer due to said B. Peterson each month and collectible by him." This, we think, in effect amounts to providing that title in Peterson shall cease upon the payment of the advances made.

Counsel for plaintiff in error, however, seem to insist most strongly upon their contention that since, by the terms of the original contract, it was agreed that when Lankford should have consummated his loan with the annuity company and received back from it a bond for title, the bond should be (as was actually done) assigned to Peterson, this operated to render null and void the provisions creating a mortgage. In our opinion it is true that a valid assignment of such a bond for title operates to pass to the assignee all the rights and equities to which the assignor was then entitled (*McIntire* v. *Garmany,* 8 *Ga. App.* 802, 70 S. E. 198; *Webb* v. *Harris,* 124 *Ga.* 723, 53 S. E. 247) ; but, under the facts of the present case, this agreement was but an executory promise, and by the terms of the contract the assignment was not to go into effect until long subsequent to the creation of the mortgage. Therefore, the question is, as we see it, whether the mortgage lien became merged into a subsequently acquired title. It is a well-

recognized principle of law that merger does not in general take place unless the parties so intended. *Knowles* v. *Lawton,* 18 *Ga.* 476 (63 Am. D. 290); *Ferris* v. *Van Ingen,* 110 *Ga.* 102 (35 S. E. 347); *Coleman & Burden Co.* v. *Rice,* supra; *Woodside* v. *Lippold,* 113 *Ga.* 877 (39 S. E. 400, 84 Am. St. R. 267); *Goodell* v. *Hall,* 112 *Ga.* 435 (37 S. E. 725). It will be observed that the agreement in the present case specifically provides that the bond shall later be assigned as "additional" security; which is certainly equivalent to providing that the mortgage lien shall not be superseded. Even if the transfer of title were not, as in this case, void because of usury, and had been made contemporaneously with the creation of the mortgage, we can see how it might be urged with some force that, since, by the agreement, such assignment of title was to be in the nature of additional security only, if either form of security must fail, the latter, though of a higher form, should be declared invalid as being merely an illegal attempt to add to and supplement, though not to supersede an already existing valid lien. But since the assignment of title is in fact subsequent to the creation of the mortgage and is within itself absolutely void, we do not think that the prior valid mortgage should be held to have been merged therein, where it not only does not appear that such was the intent, but where the contrary purpose is definitely expressed.

2. Exceptions are taken to the direction of the verdict in favor of plaintiff, on the ground that since the instrument foreclosed was merely an executory promise or agreement on the part of Peterson, whereby he obligated himself to advance certain money to Lankford on condition that the latter himself should comply with certain obligations devolving upon him by the terms of the agreement, the instrument does not afford prima facie proof that such advances were actually made. The defendant, by its answer, denied in general terms the amount alleged to be due. The plaintiff having become deceased prior to the date of the trial, the defendant was rendered unable to testify in his own behalf as to the transaction had with the decedent. Ordinarily the mortgage and the collateral obligation which it secures are prima facie evidence of the existence and the amount of the debt therein set forth; but where the consideration of the obligation is not definitely ascertained at the time of its execution, or consists of con-

tingcnt liabilities or advances to be thereafter made, it becomes incumbent on the holder of the obligation to show the amount actually advanced thereunder. 27 Cyc. 1613-14. In this case it is conceded that Lankford fully performed the obligations resting on him under the contract, and which constituted the condition upon the performance of which the advances set forth in the contract were to be made. This, however, of itself would not be sufficient to carry the burden resting upon the plaintiff. We think, however, there being no conflict in the evidence, that what was actually shown, with all reasonable deductions and inferences therefrom, demanded a finding that the full amount of the advances which the agreement obligated had in fact been actually made. It will be recalled that by the terms of the contract the $10,000 was to be advanced during the course of construction of the building, in four installments of $2,500 each, the first installment to be paid in May, and the payments to continue through June, July, and August. Section five of the contract provided that "during the construction of said building. . . W. C. Lankford is to pay $30.00 per month for the first month said building is under course of construction, $60.00 for the second month, $90.00 for the third month, and $120.00 for the fourth month, and each month thereafter; said amount to be paid to the said B. Peterson as his part of the rents of said building, or part of building during said time." By section four it was agreed that "W. C. Lankford is to guarantee the rental value of said building to be $300.00 per month, that is to say that the said W. C. Lankford is to pay to the said B. Peterson the sum of $120.00 per month as his part of the rents from said building, be the amounts so received more or less." At the trial it was admitted "by the plaintiff and the defendant and their attorneys that W. C. Lankford paid to B. Peterson the following amounts on the following dates: $30.00 on June 1st, 1912; $60.00 on July 1st, 1912; $90.00 on August 1st, 1912; $120.00 on September 1st, 1912; and also $120.00 on the first of each month thereafter up to and including November 1st, 1914; and that these payments were paid as interest, and that the said payments were applied as interest up to November 1st, 1914." In addition to this, the plea of the defendant sets up that the contract was a scheme or device by which plaintiff was to collect $12.00 per month on each thousand dollars advanced. And

then, too, the collateral agreement subsequently signed by each of the parties on February 1, 1915, states that "The interest due on the within and foregoing mortgage has been satisfactorily arranged and paid to November 1, 1914, and it is hereby agreed *that said mortgage and the indebtedness secured thereby* shall from and after said November 1, 1914, bear interest at the rate of 8% per annum, thus superseding the original plan in said mortgage as to payment of said interest by rents collected."

From all of which it appears to us that no other finding could have been had than that the entire $10,000 contemplated by the agreement had been actually advanced.

3. The bill of exceptions contains the following statement: "It was admitted by plaintiff and the defendant and their attorneys that W. C. Lankford paid to B. Peterson the following amounts on the following dates: $30.00 on June 1st, 1912; $60.00 on July 1st, 1912; $90.00 on August 1st, 1912; $120.00 on September 1st, 1912; and $120.00 on the first of each month thereafter up to and including November 1st, 1914, *and that these payments were paid as interest and that the said payments were applied as interest up to November 1st,* 1914." It was held in *Atlanta Savings Bank* v. *Spencer,* 107 *Ga.* 630 (33 S. E. 878), that "When not otherwise directed by the debtor, payments made on a debt infected with usury will be applied first to the payment of the legal interest due at the date of the payment; and any balance remaining after such interest is discharged will go in reduction of the principal. A plea alleging such payment may be properly filed to an action on the debt, notwithstanding more than twelve months have elapsed after the payment before the plea is filed." In the opinion in that case (p. 635) it is specifically stated that direction is given thereto by reason of the fact that there was no express agreement that the payments made were to be applied otherwise than in the manner the law would direct. See also *Cheapstead* v. *Frank,* 71 *Ga.* 549; *Gramling* v. *Poole,* 111 *Ga.* 93, 96 (36 S. E. 430). In the *Cheapstead* case, supra, it was held that the "statute of limitations relied upon to defeat this defense is alone applicable to suits brought to recover usury which has been paid, or to a set-off claiming such a demand." Thus we think that where the payments of usury have by direction been

so applied, the statute of limitations is applicable; and no error was committed by the trial judge in this respect.

*Judgment affirmed. Broyles, P. J., and Bloodworth, J., concur.*